UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH RICKARD, | ) | Case No. 3:06CV2753 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | Magistrate Judge George J. Limbert |
| vs. | ) | |
| | ) | |
| JEFFREY WOLFE, Warden, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Respondent. | ) | |

Joseph Rickard ("Petitioner") has filed a petition filed for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. Petitioner is a prisoner at the Noble Correctional Institute seeking relief from his Ohio state court murder conviction. *Id.* On January 23, 2006, the case was assigned to the undersigned for a report and recommendation. ECF Dkt. #4. For the following reasons, the undersigned recommends that the Court deny the instant petition as time-barred by 28 U.S.C. § 2244(d).

## I. FACTUAL AND PROCEDURAL HISTORY

### A. State Trial Court Proceedings

On June 17, 1993, a jury in the Lucas County, Ohio Court of Common Pleas found Petitioner guilty of one count of murder in violation of Ohio Revised Code § 2903.02. ECF Dkt. #7, Attach. 3. On June 18, 1993, the trial court sentenced Petitioner to a term of imprisonment of 15 years to life. *Id.*

-1-

The Sixth District Court of Appeals of Ohio would later summarize the evidence that had been introduced at trial:

> On April 4, 1993 appellant was indicted on one count of aggravated murder, in violation of R.C. 2903.01(B), and one count of aggravated robbery, in violation of R.C. 2911.01, for his alleged participation in the fatal beating of Vernon Huggins. The case proceeded to trial by jury on June 14, 1993.FN1
>
>> FN1. Louie Costilla was indicted and tried jointly with the appellant, however, he filed a separate appeal and his participation in the offense will be considered by this court only as it relates to appellant Rickard's involvement.
>
> At trial, testimony revealed that Huggins' body was found in Wilson Park between 7:30 and 8:00 a.m. on August 4, 1992. Dr. Diane Scala-Barnett of the Lucas County Coroner's Office testified that Huggins had several fractured ribs and that his death had been caused by his skull having been fractured into many pieces. She testified further that, based on her examination of the type of damage that had been done to the skull, it was her opinion that something long and very heavy, such as a metal pipe, tree branch, ball bat, tire iron or crow bar had been used in the beating.
>
> Joey Hall, a member of a gang called the Bishops, testified that on the night of August 3, 1992 he, and other gang members, including appellant, Louie Costilla, Mel and Larry Vasquez, left Lisa Earl's house on Yates Street, where they had been drinking and smoking marijuana, at around midnight or 1:00 a.m. He stated that Mel Vasquez was carrying a "baseball bat thing" and Larry Vasquez had a club and that they walked to Wilson Park. He stated that at Wilson Park he watched appellant, Costilla, Eric Misch, and Mel Vasquez beat a black man. Although he did not see who was actually beating the man with the clubs, he stated that he saw them surround him and that everybody was kicking him. Hall stated further that afterwards Costilla pushed him and called him a wimp for not participating in the beating and then everyone ran back to Lisa's house. He stated that it was there that he observed that Mel Vasquez had a wallet that he had not had when the group left the house, that Costilla had blood on his pants and that appellant had blood on his hands. He stated during the incident that he never saw Costilla or appellant with a club.
>
> On cross-examination, by Costilla's counsel, Hall admitted that the first time he talked to Detective Leiter he lied and denied having been at Wilson Park on the night in question. He also stated that when he went to the park with the detective he showed him a totally different location from where the beating had taken place than he had testified to in court, but that at the time he was scared.

>	Michelle Parkhurst testified that she was also a member of the Bishops and that she was drinking and smoking at Lisa's house on the night of August 3, 1992. She testified that she saw Louie Costilla, appellant, Allen Brown, Larry Vasquez, Joey Hall and another person leave the house late that night. When they returned "quite sometime later" she noticed red spots on appellant's hands and a couple other places and stated that the spots had not been there before he left. She asked appellant about the spots and he said it was paint and that it had been there before. She also noticed Costilla, and stated that he looked like he had just been in a major fight. She stated that his hair was messed up, he was sweating, his t-shirt appeared to be drenched with water, his pants were dirty, he had dark spots on his knees and it looked like there was blood on his pants. She stated that Costilla had a long, broken stick that had letters on it. She asked Costilla what he had done and he told her he "fucked up" someone and they had bashed his head in a couple of times. When asked what appellant had said she replied he really did not say anything; "[h]e laughed and bragged about things he did, yeah I helped in it too, but he never really, you know, said any verbal comments about the night." She testified that they acted proud of what they had done.
>
>	On cross-examination by Costilla's counsel, Parkhurst stated that the only two she remembered carrying clubs for sure were Costilla and Joey Hall. On cross-examination by appellant's counsel, she stated that the spots on appellant's hand were little and not smeared and, when pressed, she stated that they could have been there before.
>
>	The state rested and the defense made a motion for a judgment of acquittal as to both charges which was denied. The defense did not call any witnesses.
>
>	The court then instructed the jury as to each offense charged in the indictment, as to the lesser included offenses of murder and involuntary manslaughter, and as to aiding and abetting in accordance with R.C. 2923.03.
>
>	The jury returned a verdict of not guilty on the charge of aggravated murder but found appellant guilty of the lesser included offense of murder. The jury also returned a verdict of not guilty on the charge of aggravated robbery.

*State v. Rickard*, No. L-93-205, 1994 WL 110830 at *1-2 (Ohio App. 6th Dist. March 31, 1994), unreported.

**B.  Direct Appeal**

On July 15, 1993, Petitioner, filed a notice of appeal.  ECF Dkt. #7, Attach. 4.  On October 25, 1993, Petitioner presented one assignment of error to  the Ohio Court of Appeals for the Sixth Appellate District ("Court of Appeals"): "Defendant Appellant's conviction is against

-3-

the manifest weight of the evidence." ECF Dkt. #7, Attach. 5 at 3.  On March 31, 1994, the Court of Appeals denied Petitioner's appeal.  ECF Dkt. #7, Attach. 7.

On July 29, 1994, Petitioner filed a motion pursuant to Ohio Rule of Appellate Procedure 26(B) to have his appeal reopened ("Rule 26(B) motion").  ECF Dkt. #7, Attach. 8.  Petitioner presented no assignments of error in his Rule 26(B) motion.  *Id.*  On August 8, 1994, the Court of Appeals denied the motion.  ECF Dkt. #7, Attach. 9.  On January 19, 1995, Petitioner filed a motion with the Supreme Court of Ohio for leave to file a delayed appeal from the Court of Appeals.  ECF Dkt. #7, Attach. 10 at 2.  On January 26, 1995, the Supreme Court of Ohio struck Petitioner's motion based upon a lack of jurisdiction.  *Id*.

### C.  Post-Conviction Relief Petitions

On March 2, 1995, Petitioner filed a petition for post conviction relief with the Ohio Court of Common Pleas pursuant to Ohio Revised Code § 2953.21 ("first O.R.C. 2953.21 petition").  ECF Dkt. #7, Attach. 12 at 2; ECF Dkt. #8, Attach. 1, 4 at ¶5. Petitioner presented four assignments of error:

> I.  The basis for the court's failure to impanel an impartial jury as required was trial counsel's failure to object to the jury venier, failure to object to the prosecutive misconduct, failure to object to the obvious abuse of discretion of the trial judge which constitutes ineffective assistance of counsel under U.S.C.A. Amen. VI and Ohio Art. I §10.
> II.  Basis for imposing a judgment of conviction, and the inherent denial of due process of law under, U.S.C.A. Const. Amen. V, XIV and Ohio Art. I §16 which consequently denied petitioner his effective assistance under U.S.C.A. Amen. VI and Ohio Art. I §10 was counsel failed to properly argue, to the trial court, his criminal 29 motion for acquittal.
> III.  By counsel's failure to investigate expert witnesses in forensic science defendant was denied the effective assistance of counsel under U.S.C.A. Const. Amen. VI and Ohio Art. I §10.
> IV.  The blatant misconduct of the prosecutive attorney denied defendant due process and equal protection of the law as guaranteed him by the constitution of Ohio and the constitution of the United States.

ECF Dkt. #8, Attach. 1.  On May 1, 1995, the Court of Common Pleas denied Petitioner's first O.R.C. 2953.21 petition.  ECF Dkt. #8, Attach. 4.  Although Petitioner appealed the trial court's judgment to the Court of Appeals, the record for the instant petition lacks any indication as to when Petitioner filed the appeal.  On December 12, 1995, the Court of Appeals denied Petitioner's appeal.  ECF Dkt. #7, Attach. 12.

On May 23, 1996, Petitioner filed a second petition for post conviction relief with the Ohio Court of Common Pleas ("second O.R.C. 2953.21 petition").  ECF Dkt. #7, Attach. 13; ECF Dkt. 8, Attach. 5, 7.  Petitioner presented three assignments of error:

 I. That counsel was ineffective when he failed to call an alibi witness whose testimony would have directly contradicted the testimony of the State's only witness that placed defendant at the crime scene.
 II. That counsel was ineffective when he did not object to the misconduct of the prosecutor when the prosecutor withheld material evidence.
 III. That counsel was ineffective by not moving for a mistrial, when the court failed to disclose material information, that wrongfully denied the defense the right to peremptory challenge.

ECF Dkt. 8, Attach. 5 at 3.  On June 12, 1996, the trial court denied the second O.R.C. 2953.21 petition.  ECF Dkt. 8, Attach. 7.  Again, Petitioner appealed the trial court's judgment to the Court of Appeals, but the record for the instant petition lacks any indication as to when Petitioner filed the appeal.  On August 1, 1995, the Court of Appeals denied Petitioner's appeal. *State v. Rickard*, 701 N.E.2d 437 (Ohio Ct. App. 6th Dist. 1997); ECF Dkt. #7, Attach. 13.

On November 19, 2003, Petitioner filed a "Petition For A State Writ of Habeas Corpus." ECF Dkt. #7, Attach. 14.  Petitioner presented three assignments of error:

 I. The frist [sic] Constitutional violation and act of prejudice is with the Judge himself and Prosecutor, during jurior [sic] selection where the judge himself had prior knowledge of a juror and Prosecutor relationship, and where the Judge himself willfully and knownly [sic] withheld this information from petitioner and counselor, until petitioner used their last peremptory challenge.

> II. Now this petitioner will show during the course of this trial his due process rights were again violated, and show that he was prejudice against by the prosecutor and Judge [because the prosecutor presented prior statements from a witness knowing that those statements were false.]
>
> III. This petitioner would like to also raise the issue of new evidence, a signed affidavit from one Stacy Smith, this affidavit came to be in petition's posestion [sic] two and a half years after petition went to trail [sic] .

*Id*. at Attach. 14 at 1, 3-6, 7.  On December 10, 2003, the Noble County Court of Common Pleas granted Respondent's motion to dismiss the petition.  ECF Dkt. #7, Attach. 15, 16.

**D. DNA Testing Application**

On January 13, 2004, Petitioner filed an application for DNA testing in the Court of Common Pleas pursuant to O.R.C. 2953.72.  ECF Dkt. #7, Attach. 19, 26.  Petitioner contended that DNA testing would show that skin, blood, and hair fibers found at the crime scene did not belong to him.  ECF Dkt. #7, Attach. 26 at 2.  On February 2, 2004, the Court of Common Pleas denied the motion.  ECF Dkt. #7, Attach. 19.  On February 26, 2004, Petitioner filed a notice of appeal from the Court of Common Pleas' judgment.  ECF Dkt. #7, Attach. 20.  On June 30, 2004, the Court of Appeals dismissed Petitioner's appeal because he had not filed assignments of error or a brief in support of his motion.  ECF Dkt. #7, Attach. 22.

On August 28, 2006, Petitioner filed a complaint in mandamus in the Supreme Court of Ohio.  ECF Dkt. #7, Attach. 17 at 2.  Petitioner sought an order directing the prison warden and the Ohio attorney general to administer DNA testing, polygraph testing, and a hypnosis refresher.  ECF Dkt. #7, Attach. 18 at 1, 4, 18.  Petitioner argued that newly discovered DNA testing techniques could prove his innocence because no DNA was found at the crime scene.  *Id*. at Attach. 18 at 4.  He further argued that only an innocent individual would request a polygraph or a hypnosis refresher.  *Id*. at Attach. 18 at 6, 14.  On November 1, 2006, the court dismissed the

case. ECF Dkt. #7, Attach. 17, 24.

### E. Federal Habeas Corpus Petition

On November 6, 2006, Petitioner, *pro se*, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. ECF Dkt. #1; *see Towns v. U.S.*, 190 F.3d 468, 469 (6th Cir. 1999) citing *Houston v. Lack*, 487 U.S. 266, 270-74 (1988) (a *pro se* prisoner's petition is considered to be filed on the day he delivers it to prison authorities). Petitioner presents four grounds for relief:

   I.   Conviction obtained by the unconstitutional failure of the prosecution/attorney to disclose nor submit evidence favorable to defendant.
        **Supporting Facts:** The state as well as counsel had knowledge and held factual evidence to show that I am actually innocent.
   II.  Denial of my rights to access the court to present newly discovered evidence and to support it.
        **Supporting Facts:** A evident hearing, if held would introduce newly discovered evidence, as well as evidence in which the state was aware of to show factual innocence and if such relief sought of a polygraph test, and hypnosis refresher, sodium amytal was given, it would further support the newly discovered and factual evidence.
   III. The lower courts deprived me my rights to be protected from cruel and unusual punishment.
        **Supporting Facts:** To hold a innocent inmate in prison for over 10 years and then upon discovered evidence to support a innocent claim is a true definition of cruel and unusual punishment. The lower courts denied me rights secured to present factual evidence to prove my innocence.
   IV.  The State Supreme Court violated my federal rights secured by denial of writ.
        **Supporting Facts:** The writ was unconstitutionally denied and the relief sought is constitutionally entitled.

ECF Dkt. #1 at 5-6. On January 23, 2006, the case was assigned to the undersigned for a report and recommendation. ECF Dkt. #4. On April 20, 2007, Respondent filed a return of writ and an amended return of writ. ECF Dkt. # 7,8. On May 21, 2007, Petitioner filed a traverse. ECF Dkt. #9.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this Court's review of the instant matter because Petitioner filed his petition for writ of habeas corpus on November 6, 2006, well after the AEDPA's effective date of April 24, 1996. *See Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  In general, a state prisoner seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 must comply with the statute of limitations period set forth in 28 U.S.C. § 2244, which provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).  Additionally, if a petitioner's conviction became final before the effective date of the AEDPA, then he is allowed a one-year grace period from the effective date of the

-8-

AEDPA in which to file a timely federal habeas corpus petition. *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003); *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir. 2002); *Brown v. O'Dea*, 187 F.3d 572, 576 (6th Cir. 1999), *overruled on other grounds*, 530 U.S. 1257 (2000).

The one year grace period is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts. *Jurado*, 337 F.3d at 640; *see* 28 U.S.C. § 2244(d)(2). To determine if a state proceeding will toll the statute of limitations, the Sixth Circuit has held that:

> A state petition for post-conviction or other collateral review that does not address one or more of the grounds of the federal habeas petition in question is not a review 'with respect to the pertinent judgment or claim' within the meaning of 28 U.S.C. § 2244(d)(2), and therefore does not toll the one-year AEDPA statute of limitations.

*Austin v. Mitchell,* 200 F.3d 391, 395 (6th Cir. 1999). Further, the "tolling provision does not ... 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).

The one-year statute of limitations under Section 2244 is subject to equitable tolling when a petitioner's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the petitioner's control. *Dunlap v. United States,* 250 F.3d 1001, 1004 (6th Cir. 2001); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000). The Sixth Circuit has stated that "federal courts sparingly bestow equitable tolling." *Graham-Humphreys*, 209 F.3d at 560-61; *Jurado*, 337 F.3d at 642. When determining whether equitable tolling is appropriate, the court must consider: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive

knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Dunlap*, 250 F.3d at 1008; *Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002). These factors are not comprehensive and not all of the factors are relevant in all cases. *Cook*, 295 F.3d at 521. Whether equitable tolling is appropriate is a case-by-case analysis. *Id.* The petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling. *Vroman,* 346 F.3d at 605.

**III.    ANALYSIS**

Respondent argues that the instant petition is time-barred under either Section 2244(d)(1)(A) or Section 2244(d)(1)(D) of the AEDPA. ECF Dkt. #8 at 13-18. Petitioner does not contend that he has complied with the AEDPA statute of limitations. ECF Dkt. #9. Instead, Petitioner argues that the purpose of the AEDPA is to prevent violations of constitutional rights. *Id*. at 2. Petitioner alternatively argues he is actually innocent and that he has demonstrated by clear and convincing evidence that no reasonable factfinder would find him guilty in light of newly discovered evidence. *Id*. at 2-5. For the following reasons, the undersigned recommends that the Court find the instant petition to be time-barred.

**A. Petitioner Filed the Instant Petition Outside of the AEDPA's One Year Grace Period.**

Since Petitioner's conviction became final upon the conclusion of direct review in 1995, well before the effective date of the AEDPA on April 24, 1996, he was entitled to a one-year grace period to file a timely federal petition. *Jurado*, 337 F.3d at 640; *Cook*, 295 F.3d at 519; *Brown*, 187 F.3d 572. This one year grace period can be tolled by the amount of time that "a properly filed application for State post-conviction or other collateral review with respect to the

pertinent judgment or claim is pending" in state court. *Jurado*, 337 F.3d at 640 (6th Cir. 2003); *see also* 28 U.S.C. § 2244(d)(2).

Even if the Court gives Petitioner the benefit of the doubt and assumes all of his post-conviction motions were properly filed and tolling applies, he still has exceeded the AEDPA grace period by 2,817 days, as the following calculations show.[1] Between the AEDPA's effective date of April 24, 1996 and May 23, 1996, Petitioner had no appeals pending in any Ohio court. Therefore, 29 days of his grace period elapsed. Petitioner's grace period was tolled from May 23, 1996 (when he filed his second O.R.C. 2953.21 petition) to August 1, 1997 (when the Court of Appeals affirmed the trial court's denial of the second O.R.C. 2953.21 petition).[2] After the Court of Appeals affirmed the trial court's denial of the second O.R.C. 2953.21 petition on August 1, 1997, 2,301 days elapsed before Petitioner filed a petition for a writ of habeas corpus in the state courts on November 11, 2003. The Court should note that this delay alone is sufficient to consume Petitioner's one year grace period to file a federal petition. In addition, 34 days elapsed between the time the Court of Common Pleas denied the writ (December 12, 2003) and the date on which Petitioner filed an application for DNA testing (January 13, 2004); 24

---

[1]This is a generous assumption considering the fact that Petitioner filed two petitions for post conviction relief in the state courts. Under O.R.C. 2953.21(A), a defendant may only file a successive petition for post conviction relief if he was unavoidably prevented from discovering facts upon which his claim is based, a subsequent U.S. Supreme Court recognizes a constitutional right retroactively, or the petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense. The Ohio Court of Appeals held that Petitioner's second O.R.C. 2953.21 petition was improperly filed. *Rickard*, 701 N.E.2d at 438-39.

[2]Some of Petitioner's grace period elapsed between the time the trial court denied his second O.R.C. 2953.21 petition and when he filed an appeal of that decision to the Court of Appeals. Again, the undersigned will give Petitioner the benefit of the doubt because the record for the instant petition does not indicate when he filed the appeal.

days elapsed from the time the trial court denied the application for DNA testing (February 2, 2004) until he filed a notice of appeal (February 26, 2004); 789 days elapsed from the time the Court of Appeals dismissed the appeal (June 30, 2004) until he filed a complaint in mandamus in the Supreme Court of Ohio (August 28, 2006); and 5 days elapsed from the time the Supreme Court dismissed the petition (November 1, 2006) until he filed the instant petition (November 6, 2006). Therefore, a total of 3,182 days should be attributed toward Petitioner's one year grace period. Since Petitioner exceeded his grace period by 2,817 days, the Court should dismiss his petition as being time-barred.

**B. Petitioner Has Failed to Establish Actual Innocence.**

Petitioner argues he is actually innocent and that he has demonstrated by clear and convincing evidence that no reasonable factfinder would have found him guilty in light of newly discovered evidence. ECF Dkt.#9 at 2-5. Petitioner presents the following evidence in support of his claim of actual innocence:

1. transcripts from Petitioner's trial showing that an eyewitness, Joey Hall, admitted to being at the scene of the crime, but he blamed Petitioner for the murder;
2. transcripts from Petitioner's trial showing the same eyewitness "lied to everyone;"
3. transcripts from Eric Misch's trial showing that another witness, John Urbina, had testified that Joey hall was at Cedar Point during the time of the murder and could not have been a the scene of the crime;
4. an article from the Toledo Newsletter including a paraphrased statement from the prosecutor indicating that there were inconsistencies in one of the Vernon Huggins murder trials;
5. a signed statement from a witness, Stacy Smith, stating that Petitioner could not have been at the scene of the crime because he was at a party tattooing guests;
6. a signed statement from Stacy Smith stating that she told Petitioner's trial attorney about the potential alibi and that she showed him a tattoo that Petitioner allegedly applied on the night of the murder;

-12-

    7.      transcripts from a police interview with Joey Hall where he implicated Petitioner in the murder;

    8.      a letter from Kevin Harriger, written from prison while he was serving a term for stealing a car (Petitioner claims the letter "clears his name"); and

    9.      an affidavit, signed by Petitioner, attesting his pure innocence.

    10.    a copy of Petitioner's complaint in mandamus to show Petitioner cited federal case law and the Constitution.

ECF Dkt.#9 at 13-14.  The Sixth Circuit has held that the Constitution requires an actual innocence exception to AEDPA's statute of limitations.  *Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005).  The Southern District of Ohio has recently summarized the burden for establishing actual innocence:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway [the AEDPA statute of limitations] and argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995).  Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial."  *Id*. at 317.  To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *Id*. at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup*, 513 U.S. at 324.  The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'"  *Id*. at 321.

*Medina v. Wolfe*, No. 2:06-CV-921, 2007 WL 2323381 at *9, slip op. (S.D. Ohio, August 9, 2007).  Based upon the evidence presented, Petitioner has fallen short of his burden of establishing actual innocence for the following reasons.

The Court should not find that a reasonable finder of fact would have acquitted Petitioner based upon the inconsistencies in the trial testimony (Items 1,2 in the foregoing list). All of this evidence was presented at trial, and it was available to the jury during deliberations. The U.S. Supreme Court stated in *U.S. v. Scheffer* that "[d]etermining the weight and credibility of witness testimony ... has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.'" 523 U.S. 303, 312-13 (1998) (quoting *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88 (1891)). Therefore, evidence that was available at trial, such as Items 1 and 2, is not a proper basis for a claim of actual innocence. *Schlup*, 513 U.S. at 324. The prosecutor's statement regarding inconsistencies at trial (Item 4) is also not compelling because the inconsistencies to which the prosecutor was referring would have been cognizable to the jury based upon the evidence presented at trial. *See Id.*

The new witnesses Petitioner presents do not establish actual innocence because he has not provided any evidence of credibility. The *Schlup* Court stated that a federal habeas court considering newly discovered evidence must give deference to the jury's determination:

> The reviewing court must somehow predict the effect that this new evidence would have had on the deliberations of reasonable jurors. It must necessarily weigh this new evidence in some manner, and may need to make credibility determinations as to witnesses who did not appear before the original jury. This new evidence, however, is not a license for the reviewing court to disregard the presumptively proper determination by the original trier of fact.

*Schlup*, 513 U.S. at 324. Consequently, a petitioner must present a *trustworthy* witness to justify a federal habeas court's finding of actual innocence in contravention to the jury's finding of guilt. *Id*. Based upon the *Schlup* Court's holding, Petitioner has the burden of persuading this Court that a reasonable jury would believe testimony from any new witnesses he presents. The

-14-

testimony from John Urbina stating that Joey Hall was at Cedar Point the night of the murder (Item 3) does not establish Petitioner's innocence because Petitioner has presented no evidence to establish Urbina's credibility. Therefore, Petitioner has not carried his burden. Likewise, Stacy Smith's affidavits (Items 5,6) do not establish Petitioner's actual innocence because Petitioner has provided no evidence to establish her credibility. Smith contends Petitioner "put a tatoo [sic] of a heart and dagger on [her] right hip early evening of the third," and she later showed the tattoo to Petitioner's attorney to verify the alibi. ECF Dkt.#9, Ex. E, F. Even assuming Smith's statement is true, her tattoo does not establish an alibi because anybody could have applied it at any time; the fact that Ms. Smith has a tattoo does not mean that Petitioner applied it on the night of the Huggins murder. Furthermore, Smith is an alibi witness, not an eyewitness as the *Schlup* Court required. Kevin Harriger's letter is also not persuasive. Harriger states that he is in prison for an automobile theft conviction. ECF Dkt. #9, Ex. H at 3. That theft conviction casts serious doubt on his credibility, and again, Petitioner has provided no evidence to establish Harriger's credibility.

Petitioner's affidavit claiming innocence is not persuasive. The *Schlup* Court stated that a claim of actual innocence must be supported by "new reliable evidence ... that was not presented at trial." 513 U.S. at 324. An affidavit by a defendant cannot be sufficient to establish a claim of actual innocence. In this case, the incentive to lie to escape a murder conviction far outweighs the risk of a possible perjury conviction for presenting a fictitious sworn statement. Moreover, Petitioner had the opportunity to testify at trial, but he chose not to. If every defendant could escape conviction by avoiding the witness stand at trial and later submitting an affidavit of innocence, then the American criminal justice system would be severely undermined.

Lastly, Petitioner's copy of his complaint in mandamus to show he cited federal case law and the Constitution is not probative of his innocence for the underlying murder charge. It relates only to the procedural history of his criminal case. For the foregoing reasons, the Court should not apply the actual innocence exception to the AEDPA statute of limitations.

**C. Petitioner Has Not Established That His Failure to File his Petition within the AEDPA's One Year Grace Period is the Result of Circumstances Beyond his Control.**

Petitioner is not otherwise entitled to equitable tolling because he has not shown his failure to comply with the AEDPA statute of limitations is the result of circumstances beyond his control. Petitioner does not claim that he lacked notice or constructive knowledge of the AEDPA statute of limitations, and prejudice to the respondent may be considered only if the other factors of the test are met. *Dunlap*, 250 F.3d at 1009. The issue, therefore, is whether Petitioner was diligent in pursuing his claims. Petitioner demonstrated his lack of diligence by allowing 2,301 days to pass between the time his second O.R.C. 2953.21 petition was denied and the time he filed his state petition for a writ of habeas corpus. Again he demonstrated a lack of diligence by allowing 789 days to pass between the time his DNA testing application was denied and the time he filed a petition for a writ of mandamus in the Supreme Court of Ohio. As a result of Petitioner's lack of diligence and his failure to establish lack of notice of the AEDPA statute of limitations, equitable tolling is not applicable.

### IV. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that this Court deny the instant petition for writ of habeas corpus as time-barred by 28 U.S.C. § 2244(d) and dismiss said petition with prejudice.

Date: September 26, 2007                                      */s/George J. Limbert*
                                                                             George J. Limbert
                                                                             United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).