UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
JOSEPH RICKARD, : CASE NO. 3:06-CV-2753
:
        Petitioner, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 1, 10, 11]
JEFFREY WOLFE, Warden, :
:
        Respondent. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    Petitioner Joseph Rickard ("Rickard") has filed timely objections to a Report and Recommendation of Magistrate Judge Limbert. [Doc. 11.] With that report, the Magistrate Judge recommended that Petitioner's 28 U.S.C. § 2254 petition be denied as time-barred. [Doc.10.] Petitioner Rickard filed timely objections to the Report and Recommendation. [Doc. 11.] For the following reasons, this Court **ADOPTS** the Magistrate's Report and Recommendation and therefore **DENIES** the Petitioner's § 2254 habeas petition.

### I. Procedural History

    Magistrate Judge Limbert recommends that this petition be dismissed as untimely under the one-year statute of limitations in the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"). This case has a long and complicated procedural history involving a direct appeal in state court, two state post-conviction relief petitions, a state

Case No. 3:06-CV-2753
Gwin, J.

habeas corpus petition, an application for DNA testing in the state courts, and this present federal habeas corpus petition. For purposes of determining the timeliness of this 28 U.S.C. § 2254 petition under AEDPA, the Court examines when Petitioner Rickard's state conviction became final.

On June 17, 1993, a jury found Rickard guilty of one count of murder in the Lucas County Court of Common Pleas. [Doc. 7-3.] The following day, the trial court sentenced Petitioner to a term of fifteen years to life in prison. *Id.* On October 25, 1993, Petitioner appealed to the Lucas County Court of Appeals, claiming that his conviction was against the manifest weight of the evidence. [Doc. 7-5.] The court of appeals denied the appeal on March 31, 1994. [Doc. 7-7.] Petitioner then filed a Rule 26(B) motion to have his appeal reopened on July 20, 1994. [Doc. 7-8.] On August 8, 1994, the Lucas County Court of Appeals denied the motion as untimely. [Doc. 7-9.]

On January 19, 1995, Petitioner Rickard filed a motion for leave to file a delayed appeal to the Supreme Court of Ohio. [Doc. 7-10.] The Ohio Supreme Court rejected this motion on the grounds that it lacked jurisdiction on January 26, 1995. [Doc. 7-11.]

On March 2, 1995, Petitioner filed a petition for post-conviction relief in the Lucas County Court of Common Pleas. [Doc. 8-1.] On May 1, 1995, the common pleas court denied the petition. [Doc.8-4.] The Lucas County Court of Appeals also denied Petitioner's appeal on December 15, 1995. [Doc. 7-12.] The Petitioner then filed a second post-conviction relief petition with the Lucas County Court of Common Pleas on May 23, 1996. [Docs. 8-5.] The trial court denied this petition on June 12, 1996 and, on appeal, the Lucas County Court of Appeals denied it on August 1, 1997. [Docs. 8-7, 7-13.]

On November 19, 2003, the Petitioner filed a state habeas petition, which the Noble County

-2-

Case No. 3:06-CV-2753
Gwin, J.

Court of Common Pleas dismissed as facially defective on December 10, 2003. [Docs. 7-14, 7-16.]

On January 8, 2004, the Petitioner filed an application for DNA testing in the Lucas County Court of Common Pleas. [Docs. 7-26.] This motion was denied both by the trial court and, on appeal, by the Lucas County Court of Appeals. [Docs. 7-19, 7-22.] On August 28, 2006, Petitioner filed a complaint in mandamus in the Supreme Court of Ohio. [Docs. 7-17, 7-18.] He asked the court for an order instructing the prison warden and state attorney general to provide DNA testing, polygraph testing, and a hypnosis refresher, all of which Petitioner argued would prove his innocence. [Doc. 7-18.] On November 1, 2006, the Ohio Supreme Court summarily dismissed the complaint. [Doc. 7-24.]

On November 6, 2006, Petitioner Rickard filed the present petition for a writ of habeas corpus under 28 U.S.C. § 2254. [Doc. 1.] The Petitioner raises four grounds for relief: (i) the prosecution unconstitutionally withheld favorable evidence; (ii) his due process rights were violated because the state courts denied him an evidentiary hearing to present and evaluate newly discovered evidence; (iii) his confinement constitutes cruel and unusual punishment because he is actually innocent; and (iv) the state courts' denial of his habeas petition was unconstitutional. *Id.*

On January 23, 2007, this Court referred this petition to Magistrate Judge George Limbert for a Report and Recommendation. [Doc. 4.] Both parties filed briefs on the merits. [Docs. 7, 8, 9.] On September 26, 2007, Magistrate Judge Limbert issued a Report and Recommendation. [Doc. 10.] The Magistrate recommended that Petitioner's § 2254 petition be dismissed on the grounds that it is time-barred by 28 U.S.C. § 2244(d). *Id.* On October 9, 2007, the Petitioner filed timely objections to the Magistrate's Report, arguing that he is actually innocent of his crime. [Doc. 11.]

Case No. 3:06-CV-2753
Gwin, J.

## II. Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), governs the standards of review for state court decisions. The AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). *See also Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001).

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of the Report and Recommendation to which the parties have made a timely objection. 28 U.S.C. § 636(b)(1). Moreover, the factual findings of a state court are presumed to be correct. A federal court may only diverge from a state court's factual findings if the petitioner shows by clear and convincing evidence that the findings are erroneous. 28 U.S.C. § 2254(e)(1).

## III. Discussion

*A. The Timeliness of the § 2254 Petition*

A petitioner must abide by the AEDPA's one-year statute of limitations found in 28 U.S.C. § 2244(d). Under this rule, a petitioner may file an application for a writ of habeas corpus one year after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). In cases of newly

Case No. 3:06-CV-2753
Gwin, J.

discovered evidence, an applicant must file his petition within one year of when the "factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). §2244(d)(2) also provides that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

If a petitioner's criminal conviction became final before April 24, 1996, the effective date of the AEDPA, then he or she is permitted a one-year grace period from the effective date of the statute. *Jurado v. Burt,* 337 F.3d 638, 640 (6th Cir. 2003). This one year grace period is tolled for any amount of time in which a properly filed petition for post-conviction relief on the same grounds is pending in state court. *Id. See also* 28 U.S.C. § 2244(d)(2).

In this case, the Magistrate concluded that the petition is time-barred under § 2244(d)(1)(A) and § 2244(d)(1)(D) of the AEDPA. [Doc. 10.] Petitioner Rickard's conviction was final at the conclusion of direct review in 1995, prior to the AEDPA's effective date on April 24, 1996. Petitioner Rickard, therefore, was entitled to a grace period of one year in which to file a timely habeas petition. The Petitioner's grace period was tolled during the time in which he had pending applications for state court post-conviction relief.

Even if this Court generously assumes that all of the Petitioner's state post-conviction relief petitions were properly filed and thus eligible for tolling[1], the Petitioner has still filed his § 2254

---

[1] Petitioner filed two post-conviction relief petitions in state court. Under Ohio law, a defendant may only file a second or successive petition in certain limited circumstances. O.R.C. § 2953.23. The Lucas County Court of Appeals found that Petitioner Rickard's successive post-conviction relief petition was improperly filed. [Doc. 7-13.]

Case No. 3:06-CV-2753
Gwin, J.

petition over seven years after the statute of limitations ran. This Court agrees with the Magistrate's conclusion that the Petitioner exceeded the grace period for filing his habeas petition by approximately 2,817 days. [Doc. 10.] Since the Petitioner does not object to this finding, the Court does not need to review the issue *de novo*. It is sufficient for this Court to note that the Petitioner did not pursue any state or federal relief between August 1, 1997, when his second post-conviction relief petition was denied, and November 11, 2003, when the Petitioner filed his state habeas petition. This delay of over 2,000 days is alone enough to render the Petitioner's § 2254 petition time-barred.

*B. The Actual Innocence Exception*

Although he does not contend that his § 2254 petition is timely, Petitioner Rickard argues that he is actually innocent and that this excuses his untimeliness. [Docs. 9, 11.] Proof of actual innocence tolls the AEDPA's statute of limitations. *See* 28 U.S.C. § 2244(b)(2)(B)(ii); *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995); *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005). The Court must consider whether there are *new* facts that create sufficient doubt about the petitioner's guilt "to undermine confidence in the result of the trial." *Schlup,* 513 U.S. at 317. In order to establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. *See also McCray v. Vasbinder,* 499 F.3d 568, 571 (6th Cir. 2007). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Once a petitioner has established actual innocence, "the petitioner should be allowed to pass through the gateway and argue the merits

-6-

Case No. 3:06-CV-2753
Gwin, J.

of his underlying claims." *Schlup*, 513 U.S. at 316.

The U.S. Supreme Court has held that an actual innocence claim requires the petitioner "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id.* at 324. In evaluating this evidence, the court "must consider 'all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.'" *McCray,* 499 F.3d at 571 (internal quotations omitted). The Supreme Court has indicated that federal habeas petitions advancing valid claims of actual innocence are "extremely rare." *Schlup,* 513 U.S. at 321.

In this case, the Magistrate concluded that Petitioner Rickard failed to carry his burden of establishing actual innocence. [Doc.10.] The Petitioner filed objections to this finding and maintains that new evidence proves that he is actually innocent. [Doc. 11.] This Court therefore reviews *de novo* the issue of actual innocence.

The Petitioner presents the following items of evidence in support of his actual innocence claim: (i) his own affidavit attesting to his innocence; (ii) a signed statement from a potential alibi witness, Stacy Smith, claiming that Petitioner was not at the scene of the crime; (iii) a signed statement from Stacy Smith stating that she told the Petitioner's lawyer about her willingness to testify as an alibi witness; (iv) a supportive letter from a friend, Kevin Harriger; (v) a newspaper article discussing "inconsistencies" in the case; (vi) trial transcripts purportedly showing that eyewitness Joey Hall lied on the stand and to the police; (vii) testimony from another trial allegedly proving that Joey Hall was at an amusement park on the night of the murder and thus could not have

-7-

Case No. 3:06-CV-2753
Gwin, J.

been present at the crime; and (viii) a copy of his complaint in mandamus. [Docs. 1, 9, 11.]

The Court will address each of the Petitioner's evidentiary claims in turn.

### *1. The Complaint and Affidavit of Petitioner Rickard* [Docs. 9-J, 9-I]

The Petitioner offers his own complaint and signed affidavit declaring his innocence as proof for his actual innocence claim. This evidence, however, fails to rise to the level of "new reliable evidence" as required by *Schlup* and does not show that it is more likely than not that no reasonable juror would have convicted the Petitioner. A petitioner's own affidavit adds little weight to an actual innocence claim because it is self-serving and inherently unreliable. This Court agrees with the Magistrate that "the incentive to lie to escape a murder conviction far outweighs the risk of a possible perjury conviction for presenting a fictitious sworn statement." [Doc. 10.] As the Sixth Circuit has recently noted, "A reasonable juror surely could discount [the defendant's] own testimony in support of his own cause." *McCray,* 499 F.3d at 573. Further, the Petitioner's own complaint demonstrates that the Petitioner has presented numerous legal arguments during the long procedural history of his case, but the complaint itself is not evidence for this Court to consider.

### *2. The Affidavits of Stacy Smith* [Docs. 9-E, 9-F]

The Petitioner presents the sworn affidavit of Stacy Smith, signed on February 20, 1996, stating that she was with the Petitioner on the night of the crime and that he could not have committed the crime because they were tattooing guests at a party. Smith also attests that she told the Petitioner's trial counsel of her potential alibi testimony, including evidence of a tattoo that the Petitioner had placed on her that night, but that the lawyer never contacted her to testify.

The Petitioner submitted the Smith affidavit in several of his state petitions. In his second

-8-

Case No. 3:06-CV-2753
Gwin, J.

post-conviction relief case, the Lucas County Court of Appeals of Ohio concluded:

> The facts set forth in Smith's affidavit were available prior to and during appellant's trial. Appellant failed to offer any facts whatsoever to show that he was unavoidably preventing from discovering these facts. Moreover, even if we would find that appellant was "unavoidably prevented" from finding that his trial counsel knew of the existence of his alibi witness, he failed . . . to show, by clear and convincing evidence that, but for this error on the part of trial counsel, no reasonable factfinder would have found him guilty.

[Doc. 7-13.]

This Court similarly finds that the Smith affidavit is not new evidence because the Petitioner has submitted the affidavit previously in state court. Moreover, the facts underlying the affidavit were known to the Petitioner at trial; he clearly would have known about his own whereabouts and possible alibi witnesses on the night of the murder. The Petitioner does not explain why he was prevented from informing his attorney of this potential testimony, acquiring the evidence directly, or testifying himself to these facts at trial. Further, the Smith affidavit is not a "trustworthy eyewitness account" as required by *Schlup*. Smith, at best, is an alibi witness and this Court has no means to judge her credibility. As the Magistrate noted, "Even assuming Smith's statement is true, her tattoo does not establish an alibi because anybody could have applied it at any time; the fact that Ms. Smith has a tattoo does not mean that Petitioner applied it on the night of the Huggins murder." [Doc. 10.] Further, Smith states that the Petitioner went to bed with her around 1 AM on the night of the murder. The crime, however, did not happen until later that night and thus a jury could reasonably conclude that the Petitioner left the house after Stacy Smith went to sleep.

This Court concludes that the Smith affidavit is not "new reliable evidence" and does not raise sufficient doubt about the Petitioner's guilt to undermine confidence in the guilty verdict.

-9-

Case No. 3:06-CV-2753
Gwin, J.

### 3. *The Harriger Letter* [Doc. 9-H]

The Petitioner also presents a letter from a friend, Kevin Harriger, attesting to the Petitioner's good character. The letter, however, fails to prove the Petitioner's actual innocence. Character evidence does not rise to the level of trustworthy, credible new evidence required by *Schlup* to establish an actual innocence claim. Further, even if Kevin Harriger asserted that he affirmatively knew that the Petitioner did not commit the crime, the evidence is still highly unreliable. The letter was written from prison, where Harriger apparently was serving a sentence for automobile theft, and the Petitioner has not produced any evidence to render the testimony credible.

### 4. *The Newspaper Article* [Doc. 9-D]

Petitioner Rickard also submits a January 1, 1995 article from the Toledo Blade newspaper, which contains an assistant prosecutor's comments that "inconsistencies" emerged in witness testimony in the trials relating to the Petitioner's case. Inconsistencies at trial, however, even if proved, do not affirmatively and conclusively establish the Petitioner's innocence. In order to prove an actual innocence claim, a petitioner must demonstrate "factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623 (1998). Further, if the alleged inconsistencies occurred during the Petitioner's trial, the jury would have presumably noticed these credibility problems and yet ultimately still decided to convict the Petitioner of murder.

### 5. *Trial Transcripts and Interview Regarding Joey Hall's Credibility* [Docs. 9-A, 9-B, 9-G]

Petitioner also presents portions of his trial transcript regarding eyewitness Joey Hall. The Petitioner seeks to prove that Joey Hall lied on the stand, particularly when he admitted to being present at the scene of the crime and blamed the Petitioner for the murder. All of this evidence,

-10-

Case No. 3:06-CV-2753
Gwin, J.

however, was presented at trial and available to the jury during deliberations. The Supreme Court has instructed, "Determining the weight and credibility of witness testimony . . . has long been held to be the 'part of every case [that] belongs to the jury . . .'" *United States v. Scheffer,* 523 U.S. 303, 313 (1998) (internal quotations omitted). Evidence that was available and used at trial is therefore not a proper foundation for an actual innocence claim. *Schlup,* 513 U.S. at 324 (requiring petitioner to submit "new reliable evidence . . that was not presented at trial").

Petitioner Rickard also submits part of a transcript of a police interview with eyewitness Joey Hall in which Hall admitted being present at the scene of the crime. Such evidence again was available to the jury because Joey Hall testified as an eyewitness to the murder.

### 6. Urbina Testimony Regarding Joey Hall [Doc. 9-C]

The Petitioner also attempts to prove that eyewitness Joey Hall lied at trial by submitting a portion of the transcript from Eric Misch's trial in which John Urbina testified that Hall was with him at Cedar Point on the night of the murder. The Petitioner claims that this proves that Hall was not present at the scene of the crime. The Petitioner, however, has not produced any evidence that Urbina is a credible or trustworthy witness. Furthermore, Urbina's testimony does not necessarily undermine confidence in Hall's testimony. Urbina testified that he and Hall came back from Cedar Point around 11:30 PM or midnight on the night of the murder. The record indicates that the victim was not murdered until after 1 AM. [Doc. 7-1.]

The Court thus concludes that the Petitioner has failed to show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. Furthermore, the Petitioner was not diligent in pursuing his constitutional or actual innocence claims. Accordingly,

-11-

Case No. 3:06-CV-2753
Gwin, J.

the Court finds that the Petitioner's actual innocence claim does not toll the statute of limitations and his § 2254 petition is thus time-barred.

### IV. Conclusion

For the reasons stated above, the Court **ADOPTS** in whole Magistrate Judge Limbert's findings of fact and conclusions of law and incorporates them fully herein by reference. The Court **DENIES** Petitioner's application for habeas corpus. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and no basis exists upon which to issue a certificate of appealability. 28 U.S.C. § 2453(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.


Dated: December 17, 2007                    s/         *James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE